### TEXAS & P. RY. CO. v. WHITTINGTON.*
(No. 3350.)

(Court of Civil Appeals of Texas. Texarkana. March 4, 1927. Appellant's Rehearing Denied March 24, 1927.)

**1. Carriers ☞287(4)—It is carrier's duty to assist passengers from station to train if reasonably apparent that assistance is needed.**

Though ordinarily, when a carrier has provided reasonably safe facilities for passengers to go from station to train, it does not owe them the absolute duty to assist them in using such facilities, if circumstances of particular case make it reasonably apparent that such assistance is needed, it is carrier's duty to furnish it.

**2. Carriers ☞318(8)—Finding that railroad's negligence in failing to assist passenger down station stairway was proximate cause of injury held warranted by evidence.**

In action for personal injuries sustained by passenger who fell down stairs in railway station, evidence that passenger, though a strong, healthy woman, was 64 years of age, weighed about 175 pounds, was incumbered with an almost helpless husband, and heavy luggage, and that stairway consisted of 40 steps, held to warrant finding that railroad's negligence in failing to assist her in descending was proximate cause of injury.

**3. Carriers ☞287(4)—Passenger's failure to request assistance in descending stairway held mere circumstance to be considered with other evidence on issue of carrier's negligence.**

Failure of passenger to request assistance in going down stairway of railroad station to train held mere circumstance to be considered in connection with other circumstances of case in determining whether carrier was negligent in failing to render assistance in descending steps.

**4. Carriers ☞318(8)—Passenger's testimony that she did not know cause of her falling down steps held not conclusive on issue of carrier's negligence.**

In action for personal injuries sustained by passenger who fell down stairs of railway station, plaintiff's testimony that she did not know what caused her to fall held not conclusive on issue of carrier's negligence in failing to assist her in descending stairway.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 18, 1927.

(292 S.W.)

**5. Trial** ⊜⇒194(18)—**Instruction to find for passenger, if railroad's failure to assist her in descending steps proximately caused injury, held not objectionable as on weight of evidence.**

Instruction to find for passenger, if jury believed from preponderance of evidence that carrier's failure to assist her in descending steps in station was negligence proximately causing the accident, *held* not objectionable as being on weight of evidence, in that it assumed that passenger needed assistance in descending steps.

**6. Carriers** ⊜⇒321(6)—**Refusal of instruction to find for carrier, if passenger's physical condition did not necessitate assistance in descending steps, held not error.**

In passenger's action for injuries sustained by falling down steps in railroad station, refusal of carrier's requested instruction to find for it, if plaintiff was in such physical condition that she did not need assistance to descend steps in reasonable safety, *held* not error, since jury had right to say that she needed assistance because incumbered by heavy luggage and a nearly helpless husband, though her physical condition alone might not have required it.

**7. Appeal and error** ⊜⇒216(2)—**Party wishing more specific instruction on issue submitted, must submit correct instruction to complain on appeal.**

If an issue made by the pleadings and evidence has not been submitted at all, a requested instruction, though defective, is sufficient to call court's attention to the matter and require submission of a correct charge on the issue, but, if issue has been submitted generally, party wishing a more specific charge must submit correct instruction in order to be entitled to complain on appeal.

On Motion For Rehearing.

**8. Carriers** ⊜⇒321(6)—**Instruction to find for carrier, unless it knew passenger needed assistance in descending steps, properly refused.**

Carrier's requested instruction to find for it, unless it knew, before passenger's attempt to descend steps of railroad station, that she needed assistance to descend with reasonable safety, *held* properly refused, since jury had right to find for passenger, if they believed from evidence that carrier ought to have known of such necessity.

Appeal from District Court, Cass County; Hugh Carney, Judge.

Action by Mrs. Fannie Whittington against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

This suit by appellee, Mrs. Fannie Whittington, against the appellant railway company was to recover damages for personal injury she suffered August 4, 1925, in falling down a stairway in the Union Terminal Building in Dallas. The stairway was provided for use by passengers in going from waiting rooms in the depot to trains in the terminal company's yards. Appellee, then

about 64 years of age, and her husband, then an invalid, and since deceased, were passengers, and, when she fell down the stairway, were going from one of said waiting rooms to take one of appellant's trains for Atlanta. In her petition appellee alleged that her falling down the stairway was due to negligence of appellant in failing to have some one to assist her in descending same; and the court, in a general charge, told the jury to find in her favor if, other conditions concurring, they believed "from a preponderance of the evidence," quoting—

"that the failure of the defendant, its servants or agents to assist the said Mrs. Fannie Whittington to descend the steps was negligence, as that term has hereinbefore been defined to you, on the part of the defendant, its servants or agents; and if you further believe from a preponderance of the evidence that said failure of the defendant was the proximate cause of the fall and injury of the plaintiff."

Appellant objected to the instruction, on the ground that it was on the weight of the evidence, in that it was assumed therein that appellee needed assistance in descending the stairway, and on the ground that there was no testimony warranting findings that appellee needed such assistance, or, if she did, that appellant knew it, or that its failure to furnish such assistance was the proximate cause of appellee's falling as she did. The action of the trial court in overruling the objection to the instruction is assigned as error, as is also his refusal to instruct the jury to return a verdict in appellant's favor, and his refusal to give to the jury special charges numbered 2 and 3, requested by it, as follows:

"No. 2. If you find from the evidence introduced on the trial of this cause that Mrs. Whittington was in such physical condition at the time she attempted to go down the steps or stairway at Dallas that she did not need the assistance of any one to enable her to go down such steps in reasonable safety, then if you so find, you will return a verdict for the defendant.

"No. 3. You can in no event find a verdict for the plaintiff under the charge of the court, unless you find from a preponderance of the evidence in this case that the plaintiff, Mrs. Fannie Whittington, was in such condition that she needed the assistance of some one to aid in going down the steps with reasonable safety, and also that the defendant knew before (she) attempted to go down such steps that it was necessary for her to have aid in order for her to go down such steps with reasonable safety."

It appeared from testimony heard at the trial that the stairway in question was 5 or 6 feet wide, had a handrail on each of the sides, and had 40 steps—20 from its top to a 4-foot landing, and 20 from the landing to the ground below. The distance down the stairway from the top to the bottom thereof was 46⅓ feet. At the time of the accident appellee was 64 years of age, and weighed "about 175 or 180 pounds," one of her wit-

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

nesses testified. She was "strong and vigorous and able to get about easy," the same witness testified. Her husband was "what you would call a palsied man," a witness said, weak, nearly blind, and nearly helpless. Besides having her afflicted husband to look after, appellee was incumbered with a "little satchel," her husband's overcoat, with "some clothes folded up in it." and a paper shoe box containing food. She and her husband waited in the depot at Dallas 30 or 40 minutes for the train they intended to travel to Atlanta on. While they were waiting, they were approached by a Mrs. Cole, employed by the Young Women's Christian Association to stay at the depot and aid travelers in need of assistance. Mrs. Cole, according to her testimony asked appellee and her husband where they were going, and, when they informed her, told them their train was then being called. "They said they couldn't go alone," Mrs. Cole testified, and, she testified further, she called a "red cap" (employed by appellant to assist passengers), who took charge of the shoe box, referred to above as one of the articles appellee was incumbered with. Mrs. Cole then accompanied appellee and her husband to the stairway gate, where she left them after placing appellee's husband's hand on the stairway railing, and cautioning him to be very careful, she said. Appellee testified that, when they reached the stairway, she remarked in Mrs. Cole's presence, "This looks awfully scary," and started on down the steps. Mrs. Cole testified that appellee did not tell her that she was "not able to go down those steps without assistance," but did tell her she "couldn't get down without assistance." Appellee testified that she was holding her husband's arm with one of her hands as they started down the steps, and the satchel and overcoat, which she said was "pretty heavy," with the other, and that she fell when she reached the fifth or sixth step from the top of the stairway. "I do not know," she said, "how come me to fall. * * * I did not see anything wrong with the steps. I didn't see anything on the steps to cause me to fall, and I was looking right down at each one of the steps." "I was perfectly able," appellee testified further, "to take care of my husband until I fell. My husband was a small man. I am a right smart larger than he was, and I was stout and in good health, and able to take care of him until I fell. Q. Then you were able to take care of him, and didn't need anybody to help you, did you? A. Down steps like that I did. I had walked up them without any help, but that was going up and not like going down. I walked and carried my baggage up them."

The witness Austin, who said he was the terminal master of the Union Terminal, testified:

"We keep about 30 red caps, about 15 to the shift, and the gateman that examines the tickets at the gate. By 'red caps' I mean a porter that carries handbags for people that don't want to take them themselves, and who assist them to the trains, and then the gatekeeper is there to see that they get on the right train. Those red caps assist people on the trains if they ask for that service. Those red caps will not let old people go on by themselves if they make application for aid. They are there for that purpose, and when they alight from the train the red caps are there to take their grips or baggage and assist them up the steps."

The appeal is from a judgment in appellee's favor for $2,500.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

O'Neal & Harper, of Atlanta, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] Appellant insists the burden was on appellee to prove, and she did not, it asserts, that it was necessary for her to have assistance in descending the stairway; that it knew it; and that its failure to render such assistance was the proximate cause of her falling as she did. Therefore, it insists further, the trial court erred when he refused its request that he instruct the jury to return a verdict in its favor.

We think the contention should be overruled, for, notwithstanding testimony showing appellee to have been a strong, healthy woman, well able to take care of herself under ordinary circumstances, we are not prepared to say there was no testimony on which to base a finding of actionable negligence on the part of appellant. We agree that in ordinary cases, when a carrier has "provided (quoting from appellant's brief) reasonably safe facilities for its passengers to go from its depot to its train," it does not "owe them the absolute duty to render them assistance" in using such facilities. But it is also the law that, "if, however, the circumstances of a particular case make it reasonably apparent that such assistance is needed, it becomes the duty of the carrier to furnish the same." Wisdom v. Ry. Co. (Tex. Com. App.) 231 S. W. 344.

[2] The circumstances which we think the jury had a right to say distinguished this case from the ordinary one were; (1) That appellee, though a strong, healthy woman, was 64 years of age, weighed 175 or 180 pounds, and was incumbered with her almost helpless husband, and luggage consisting of a shoe box, a satchel, and a heavy bundle of clothing; and (2) the stairway it was necessary for her to descend to get to her train, though free of obstructions, and not defective structurally, was 5 or 6 feet wide, and consisted of 40 steps covering the distance of more than 40 feet from the top to the bottom thereof.

The jury reasonably might have thought that, having to hold her husband with one hand and the satchel and heavy bundle with the other, it was apparent that appellee could

not steady herself by holding to the railing as she undertook to descend the stairway, and hence that the porter who relieved her of the shoe box knew, or should have known, it would be dangerous for her to attempt to go down the stairway unassisted. If the jury had a right to take that view of the case, we see no reason why it was not permissible for them to conclude that the failure of appellant to render effectual assistance to appellee in her attempt to go down the stairway was a failure to exercise the high degree of care it owed her, not why it was not permissible for them to conclude that the failure to exercise such care was the proximate cause of the injury she suffered.

[3, 4] Appellant seems to think the testimony of appellee as to her ability to take care of herself, testimony showing, as appellant insists it did, that she did not request assistance in going down the stairway, and her testimony that she did not know what caused her to fall, was conclusive against a right in appellee to recover anything of it. But we think, when the testimony of appellee appellant refers to as to her ability to take care of herself is considered in connection with her statement to Mrs. Cole that she "couldn't get down without assistance," her declaration as she started down the stairway that "this looks awfully scary," and her reply to the question propounded to her, set out in the statement above, that she did need assistance in going down the steps, it is fairly subject to quite a different construction from that given to it by appellant. As to the failure of appellee (if she did fail) to request assistance in going down the stairway, it was merely a circumstance to be considered in connection with the other circumstances of the case in determining whether appellant was guilty of negligence as charged against it or not. Ry. Co. v. Miller, 79 Tex. 78, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308. The fact that appellee did not know, she testified, what caused her to fall is, of course, conclusive of nothing. The cause, and only cause, suggested by the testimony, the jury had a right to say, was the failure of appellant to discharge duty it owed her under the circumstances to assist her in going down the stairway.

Appellant cites Ry. Co. v. Wiuvar (Tex. Civ. App.) 257 S. W. 667; Flory v. Traction Co. (Tex. Civ. App.) 89 S. W. 278; Ry. Co. v. Work (Tex. App.) 100 S. W. 962; Ry. Co. v. Buchanan, 31 Tex. Civ. App. 209, 72 S. W. 96; Ry. Co. v. Garner, 52 Tex. Civ. App. 387, 115 S. W. 273, and Wisdom v. Ry. Co., hereinbefore referred to, as cases supporting its contention. We have examined all of those cases, and think none of them support the contention, unless the Wiuvar Case should be treated as an exception. There the Court of Civil Appeals said:

"It may become the duty of the carrier to assist its sick, weak, old, or disabled passengers from the train, but not so for strong, healthy females or other persons well able to care for themselves."

We are not prepared to say that the statement just quoted from the opinion of the court in the Wiuvar Case is incorrect as applied to the facts of that case, but that it is not correct in all such cases is shown by the holding of the Commission of Appeals in the Wisdom Case, hereinbefore referred to, and by the holding in others of the cases cited by appellant.

[5] It follows from what has been said, we think, the trial court did not err when he overruled appellant's objection to the part of the charge to the jury set out in the statement above, unless same was on the weight of the evidence. The contention that the instruction was objectionable on that ground is on the theory that it was assumed therein that appellee needed assistance in descending the stairway. As we construe it, the instruction contained no such assumption. Without violating same, the jury reasonably could not have found in appellee's favor as they did, unless they believed appellant's failure to assist appellee in descending the stairway was negligence, as defined in another part of the charge; and they reasonably could not have found appellant guilty of negligence in that respect unless they believed that under the circumstances of the case, as shown by the testimony, it owed appellee the duty to so assist her. McCallum v. Electric Co. (Tex. Civ. App.) 280 S. W. 342.

[6] It is clear, we think, that the court did not err when he refused to give to the jury appellant's special charge No. 2 set out in the statement above. In the "physical" condition appellee was in she might not have needed assistance in going down the stairway if she had not been incumbered as she was, and yet the jury had a right to say that so incumbered she did need such assistance. While the word "condition" in appellant's requested special charge No. 3 was not limited as it was in the other refused special charge referred to above, we think it not unlikely the jury would have construed it as if so limited, and so been misled into believing they should not consider the character of the stairway and the way appellee was incumbered in determining whether she needed assistance in descending the stairway or not. Therefore, and because we think the jury had a right to say appellant ought to have known, if it did not, that appellee needed such assistance, we think the trial court did not err when he refused to give said special charge No. 3 to the jury.

Appellant insists that, if it was not error for the court to refuse to give said special charge No. 3, because of its form, it was error entitling it to a reversal of the judgment for the court when he refused the requested charge to fail to prepare and submit to the jury a proper charge supplying what it says

was an omission the refused charge was intended to supply in the instructions the court gave the jury. The argument is that the refused charge No. 3, if erroneous, was nevertheless sufficient to call the court's attention to the omission in his instructions to the jury of "an issue as to whether appellant knew (quoting from its brief), before appellee attempted to go down the steps, that it was necessary for her to have aid in order for her to descend with reasonable safety."

Whether, if appellee needed assistance in descending the stairway, appellant knew, or ought to have known it, was not an issue apart from the question as to negligence or not on its part, but was involved in the determination of that question. Hence it cannot be said the instruction the trial court gave the jury was erroneous, in that they were not therein told that appellant must have known or have been chargeable with knowledge that, appellee needed assistance in descending the stairway. Without disregarding the instructions given them, the jury reasonably could not have found appellant guilty of negligence, as they did, without first finding that it had, or, in the exercise of the care it owed appellee, should have had, such knowledge.

[7] If, however, the instruction complained of was not affirmatively erroneous, as we have determined, but was negatively so in the respect urged by appellant, it has no right to complain of the refusal of its erroneous special charge intended to supply the supposed omission, nor of the failure of the court to prepare and give the jury a proper charge covering such omission, because it did not object to the instruction given the jury on the ground that it was so negatively erroneous. Ry. Co. v. Thompson (Tex. Civ. App.) 222 S. W. 289; Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183. In that state of the case, as we understand it, the rule stated as follows in the first one of the two cases just cited is not inconsistent with anything said in the other one:

"If an issue made by the pleadings and evidence has not been submitted at all, a requested instruction, though defective, is sufficient to call the court's attention to the matter and require the submission of a correct charge on the issue. But if the issue has been submitted generally, the party wishing a more specific charge must submit a correct instruction in order to be entitled to complain on appeal."

As we view the record, there is no error in the judgment. Therefore it is affirmed.

#### On Appellant's Motion for Rehearing.

[8] It may be this court erred in holding that the trial court had a right to refuse appellant's requested special charge No. 3 on the ground that, if given, it might mislead the jury, as suggested in the opinion, but, if it did, a correction of the error would not require a change in the ruling made by this court with reference to said special charge, for the trial court had a right to refuse the charge on the other ground specified in said opinion, to wit, that the charge was incorrect, in that it forbade a finding by the jury in appellee's favor, unless they believed appellant knew it was necessary for appellee to have assistance in going down the stairway, whereas, other conditions concurring, the jury would have had a right to find for appellee if they believed from the testimony that appellant ought to have known, if it did not, of such necessity. Ry. Co. v. Williams (Tex. Civ. App.) 183 S. W. 1185.

Other rulings made in disposing of the appeal are believed to be correct.

The motion is overruled.