**TULSA YELLOW CAB, TAXI & BAGGAGE CO. et al. v. SALOMON.**

No. 27359.  Jan. 11, 1938.

520

for personal injuries alleged to have been sustained as a result of a fall while attempting to alight from defendant's taxicab. The jury returned a verdict for plaintiff for, $1,500. Defendants appeal.

The acts of negligence charged are substantially as follows: That the plaintiff engaged the cab for transportation from the Mayo Hotel to the Community Fund Building in Tulsa. During the drive and at the time of their arrival at her destination a heavy rain was falling; that the cab was not equipped with an arm guard for the convenience and safety of passengers in leaving the cab; that in alighting from the cab she extended her foot to the right-hand running' board of the cab; that the cab was in a sloping position and the running board was worn smooth and slick and was in a poor state of repair and was slippery from the rain; that her foot slipped from the running board toward the pavement, and that the heel of her left shoe caught on a loose metal strip attached to the frame of the cab underneath the door; that she was suspended in this position momentarily and finally fell to the street in such a manner that her left foot and leg were underneath her body; that at the time plaintiff was 51 years of age, was five feet and two inches tall and weighed about 168 pounds; that in such fall she suffered severe and painful injuries and was forced to leave her employment and be placed in a plaster cast under the care and treatment of a physician and that her injuries are permanent.

Plaintiff further alleges that said injuries were received because of the failure of defendants to furnish her reasonably safe means of transportation and the failure to maintain the cab in a reasonably safe condition for conveying passengers and with failure to exercise due diligence in assisting plaintiff to alight from the cab.

The defendant answered by general denial and by plea of contributory negligence. Errors assigned by the plaintiffs in error are grouped under the following heads: (1) Error of the court in not declaring a mistrial upon the examination of jury on their voir dire; (2) error of the court in overruling defendants' motion to strike in that there was no duty upon the part of the defendants to assist the plaintiff from the cab; and (3) the admission of incompetent, irrelevant, and immaterial testimony, particularly as to the picture of the cab taken in December, 1935. The errors assigned will be disposed of in their order.

Hudson & Hudson and T. A. Aggas, for plaintiffs in error.

Milsten & Milsten, for defendant in error.

PHELPS, J. Plaintiff sued the defendants to recover damages in the sum of $25,903.65

In the voir dire examination counsel for plaintiff asked the jurors the nature of

their business. One of the jurors said that he was in the insurance and casualty business. The remaining jurors were then asked if they were, or had been, in the insurance business. Counsel for defendants requested the court to declare a mistrial on the ground that the statement was prejudicial and disqualified the jury from service in the trial of the case. In reply to an injury of the court as to the purpose of the question, counsel replied:

"The purpose of asking the question was to ascertain whether or not I had any member of this jury who were engaged in the casualty insurance business, so that I would be able to intelligently and properly exercise my peremptory challenge, because the attorneys for the defendant in this case is covered by insurance, and I asked the question to find out whether or not I had anybody on the jury that might represent the defendant's insurance company."

The foregoing proceeding was had out of the presence of the jury. We find no error in the court's refusal to declare a mistrial. Beasley v. Bond, 173 Okla. 355, 48 P. (2d) 299.

In support of an allegation in her petition plaintiff testified that the defendant Robert Dryer, driver of the cab, failed to assist her in alighting from the cab: that because of her extreme weight and the inclemency of the weather, this omission constituted an act of negligence. Conforming to this testimony the court gave the following instruction which is challenged by the defendants:

"You are instructed that a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill; and must provide vehicles safe and fit for the purpose to which they are put, and is not excused for default in this respect by any degree of care; and must give to passengers all such accommodations as are usual and reasonable, and must give them a reasonable degree of attention.

"If the defendants failed to exercise the care as required in this instruction, such failure constitutes negligence."

This instruction was applicable to the evidence and enunciates the statutory provisions prescribing diligence to be exercised by carriers for hire in sections 9260 to 9263, O. S. 1931.

Counsel for defendants cite no authorities in support of their contention that the evidence presented and the instruction given on the point constitute error; contending

that a duty to aid passengers in alighting from a conveyance arises when, and only when, the passenger is infirm, physically impaired, or ill. This rule is not without exceptions. In Interstate Compress Co. v. Arthur, 53 Okla. 212, 155 P. 861, in the syllabus we said:

"What is or is not negligence is ordinarily a question for the jury and not the court. Where the standard of duty is not fixed, but variable, and shifts with the circumstances of the case, it is incapable of being determined as a matter of law and, where there is sufficient evidence, must be submitted to the jury to determine what it is and whether it has been complied with."

In 2 Hutchinson on Carriers, 1329, the author says:

"Whether the circumstances are such in a given case as to suggest the necessity of assisting a passenger to alight is a question for the jury."

A statement to the same effect is found in Moore on Carriers, page 682:

"Ordinarily, whether or not assistance should be rendered by the carrier's employee to a passenger in a given instance is a question for the jury under the circumstances of the case."

In St. Louis & S. F. Ry. Co. v. Dobyns, 57 Okla. 643, 157 P. 735, this court, discussing the question involved, said:

"Whether or not a duty of personal assistance arises in such cases is, as above stated, to be ordinarily determined as a matter of fact, providing there are sufficient facts to raise a question as to the duty of the carrier, or to sustain a verdict against the carrier if the jury should find one. * * * It will be seen that whether or not an exception to the general rule of no duty on the part of the carrier arose or not must be determined from 'the circumstance of the case.' The standard of duty is not fixed, but whether or not a duty existed is ordinarily in a case of this sort a question for the jury."

This doctrine is sustained in the decision of the courts of many states. In San Antonio Traction Co. v. Flory (Tex. Civ. App.) 100 S. W. 200, the Texas Civil Court of Appeals sustained the following instruction:

"Or if you believe from the evidence that said car was stopped near the corner of Simon and South Flores streets, and that plaintiff's wife proceeded to alight therefrom, and that the step and platform, or both, was muddy and slippery, and that the agent of the defendant, the conductor in charge of said car, failed to assist the plaintiff's wife to alight therefrom, and that the failure of said conductor to assist plain-

tiff's wife from said car was negligence, and that such negligence, if any, was the proximate cause of the accident to plaintiff's wife, if any, and that she was injured thereby, then you must find your verdict for the plaintiff."

In International & G. N. Ry. Co. v. Williams, 183 S. W. 1185, the Texas Court of Civil Appeals held:

"The circumstances of each case determine the negligence or not of the carrier, but it is the rule that the carrier owes to every passenger the highest degree of care, **without regard to age, sex, or bodily infirmity.** What, however, would be the greatest degree of care under one state of facts might be negligence under others. Whether or not the care had been exercised, is a matter to be determined by a jury."

In Mahaney v. St. Joseph A. T. Co. (Mo.) 46 S. W. (2d) 817, the Supreme Court of Missouri, in the body of the opinion, held:

"Whether or not it was the driver's duty, under the circumstances, to render such aid (in alighting) is a question of fact for the jury, under proper instructions, keeping in mind the degree of care required of a common carrier of passengers."

A case very much in point is Wisdom v. C., R. I. & G. Ry. Co., 231 S. W. 344, wherein the Supreme Court of Texas held: Where the steps of a car are defective, and more or less unsafe for use in alighting, as where the rubber mats thereon are worn off, or worn smooth in places, leaving the steps smooth and slick, it is the duty of the carrier to render such assistance to a woman alighting as would make the use of such steps safe.

See, also, Heinige v. Little Ferry Bus Line, 171 Atl. 135, 12 N. J. Mis. R. 213; Missouri Pacific Ry. Co. v. Blevins (Ark.) 59 S. W. (2d) 25; 10 Am. Jur. 229, and cases cited.

In San Antonio Traction Co. v. Flory, supra, the court said further:

"The error which, it seems to us, counsel have fallen into, is the idea that such a duty (to assist alighting passengers) **can arise only in cases of a crippled or infirm passenger or one encumbered with a load,** and that if the passenger is physically sound and unencumbered, there can be no situation in which a duty devolves on the carrier to take precautions for his or her safety in alighting. We think these observations and those expressed in the former opinion sufficiently state our reasons for overruling this contention."

We conclude that under the facts in the present case the question whether the defendants used due care in assisting the plain-

tiff to alight from the cab was a question to be decided by the jury.

Finally, it is contended that the court erred in admitting incompetent, irrelevant, and immaterial evidence; particularly photographs of the cab taken approximately nine months after the date of the injury. The photographs were taken at the instance and in the presence of counsel in the case, on November 29, 1935, and show the doorway of the cab and the metal strip attached to the body of the car underneath the door, on which strip, it is alleged, the heel of plaintiff's left shoe caught as she attempted to alight from the car.

Mr. Milsten, counsel for plaintiff, testified that he examined the metal strip in the car two days after the accident and at the time made request of the driver for permission to take photographs, and that his request was refused. That soon thereafter witness went to the place of business of the defendant and made a further examination of the cab. That the location of the cab in the building was such as to preclude the taking of a picture. The witness testified that the condition of the metal strip, as it appears in the photograph, is the same as it was at the time he made the examination two days after the accident, and on the day of his subsequent examination of the cab.

Emile Salomon, called as a witness for plaintiff, testified that he examined the cab on the day of the accident and again before the trial. That the photographs clearly and accurately show the condition of the metal strip as it appeared at the time he made the examination. In view of this testimony we conclude that proper foundation was laid for the introduction of the photographs in evidence and that the facts disclosed by the testimony bring the case within the rule enunciated by this court in St. Louis & S. F. Ry. Co. v. Dale, 36 Okla. 114, 128 P. 137. In that case we said:

"Nor do we think the fact that the photographs were taken long after the date that plaintiff's crops were destroyed necessarily rendered the testimony irrelevant or incompetent, though courts should exercise great care in the admission of such character of evidence where changes in conditions have occurred between the date of the occurrence of the act and that of taking the photographs"—and cases cited.

The metal strip in question was introduced in evidence by the defendants. The jury was thus enabled to determine from all the evidence presented the condition of the strip at the time of the injury.

We have carefully examined the record in the case and we conclude that no prejudicial error was committed. The judgment of the trial court is affirmed.

RILEY, WELCH, CORN, GIBSON, and DAVISON, JJ., concur. OSBORN, C. J., and BAYLESS, V. C. J., absent. HURST, J., disqualified and not participating.